THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* CLARENCE ROBERTS, Defendant-Appellant.

First District (4th Division)    No. 80-947

Opinion filed May 28, 1981.

Louise Katz, of State Appellate Defender's Office, of Chicago, for appellant.

Richard M. Daley, State's Attorney, of Chicago (Marcia B. Orr and Mark E. Thompson, Assistant State's Attorneys, of counsel), for the People.

Mr. JUSTICE JIGANTI delivered the opinion of the court:

Following a trial without a jury in the circuit court of Cook County, the defendant, Clarence Roberts, Jr., was found guilty of the attempt (murder), aggravated battery and armed robbery of Michael O'Sullivan. He was sentenced to 20 years' imprisonment. The defendant contends on appeal that the trial court erred in denying his motion to quash his arrest

and to suppress evidence of a gun as well as all evidence which flowed from the seizure of the gun. The gun was seized during the investigation of a burglary unrelated to the offenses charged.

At a hearing on the motion, Chicago police officer Michael Cronin testified that on April 9, 1977, he spoke with Rosetta Dawson regarding a burglary which occurred at approximately 9:30 that evening. Dawson reported that her nephew and four other men burglarized her apartment, taking money, several items of men's clothing and a gun. She gave a full description of her nephew but described the others only as black men in their "low twenties." Dawson also indicated that the men "hung around" the Westlane Hotel located a few blocks away from her apartment.

At approximately 4 a.m. on April 10, 1977, Cronin was engaged in a narcotics investigation in front of the Westlane Hotel. His partner was not present at the time, and Cronin was not in uniform. His handcuffs were in the car. Cronin was talking with a man named Earl Williams when he saw the defendant and another man walking toward the hotel entrance. The defendant was carrying a three-piece suit, a long-sleeved dress shirt and a coat on a hanger draped over his shoulder. His companion was carrying a plastic shopping bag. Both men were black and appeared to be between 20 and 30 years old.

Cronin identified himself as a police officer, drew his gun and ordered the two men to halt. He then conducted a pat-down search and found a gun in the defendant's pocket. He placed the men under arrest and told them that there had been a burglary earlier and that he believed they could be the offenders.

The defendant testified that he and a companion were walking to the defendant's residence in the Westlane Hotel when they were stopped by a plainclothes police officer. The defendant was carrying men's clothing "out in the open" on a hanger. The officer identified himself as a policeman, drew his gun and ordered the men to halt. They stopped immediately and did not attempt to flee or change direction. The defendant had both hands visible. With his gun drawn, the officer searched their pockets and retrieved a gun from the defendant's pocket. He then informed the defendant that he was under arrest.

The gun seized from the defendant was tested at the crime laboratory. It was matched with a bullet that had been removed from the body of Michael O'Sullivan. O'Sullivan had been shot during a robbery at his carwash on April 7, 1977. As a result of the laboratory test, O'Sullivan was shown a photograph of the defendant. He identified the defendant as his assailant.

Prior to trial, the defendant made a motion to quash his arrest and to suppress the evidence obtained as a result of the warrantless arrest and search. The motion was denied. A stipulated bench trial followed, during

which it was stipulated that the evidence would establish the gun taken from the defendant was the same gun used in the robbery. It was further stipulated that prior to performing the test on the defendant's gun, the police had no evidence connecting the defendant to the robbery. Michael O'Sullivan and Alan Spraggniss, an employee of the carwash, testified at trial. They both identified the defendant as the man who committed the robbery and shot O'Sullivan.

The defendant characterizes the action taken by Officer Cronin as a warrantless arrest without probable cause. The State contends that it was a reasonable investigatory stop pursuant to the Illinois "stop and frisk" statutes. (Ill. Rev. Stat. 1979, ch. 38, pars. 107—14, 108—1.01.) These statutes provide as follows:

> "A peace officer, after having identified himself as a peace officer, may stop any person in a public place for a reasonable period of time when the officer reasonably infers from the circumstances that the person is committing, is about to commit or has committed an offense * * * and may demand the name and address of the person and an explanation of his actions. Such detention and temporary questioning will be conducted in the vicinity of where the person was stopped." (Ill. Rev. Stat. 1979, ch. 38, par. 107—14.)

> "When a police officer has stopped a person for temporary questioning pursuant to Section 107—14 of this Code and reasonably suspects that he or another is in danger of attack, he may search the person for weapons." (Ill. Rev. Stat. 1979, ch. 38, par. 108—1.01.)

Because the police may make an investigatory stop on less information than is necessary to constitute probable cause to arrest, it is important to properly categorize Officer Cronin's action in the case at bar.

The defendant first contends that Cronin's conduct amounted to a full arrest rather than an investigatory stop because by drawing his gun, the officer "brought the defendant immediately and completely within his control through continuous and actual restraint on liberty of movement." The defendant cites no authority for the proposition that a stop made by a police officer with his gun drawn automatically constitutes an arrest.

■■ A stop, like an arrest, is considered a seizure for purposes of fourth amendment applicability. (*Terry v. Ohio* (1968), 392 U.S. 1, 20 L. Ed. 2d 889, 88 S. Ct. 1868.) Under the Illinois "stop and frisk" statutes an officer is allowed to briefly detain a person for the purpose of investigating possible criminal activity. During the period of the investigation, the person's freedom of movement is restricted. He is no more free to leave than if he were placed under a full arrest. The difference between an arrest and a stop lies not in the initial restraint on movement, but rather in the length of

time the person may be detained and the scope of investigation which may follow the initial encounter. For example, when an officer makes an arrest, he may take the arrestee into custody, conduct a full search of his person and the area within his immediate control, and transport him to the police station. When he makes a stop, he may detain the person only for a reasonable period of time and may conduct a limited search for weapons if he reasonably suspects he is in danger. The officer may require the person stopped to identify himself and explain his actions. If the officer's suspicions are not allayed within a reasonable time, he must either make an arrest or allow the person to leave.

It would be anomalous to grant an officer authority to detain pursuant to an investigatory stop and yet deny him the use of force necessary to effectuate that detention. This court in *People v. Jordan* (1976), 43 Ill. App. 3d 660, 357 N.E.2d 159, recognized that some indication of force or threatened force is a necessary element of an investigatory stop. A noted commentator has expressed agreement with this view:

> "[I]t cannot be said that whenever police draw weapons the resulting seizure must be deemed an arrest rather than a stop and thus may be upheld only if full probable cause was then present. The courts have rather consistently upheld such police conduct when the circumstances (e.g., suspicion that the occupants of a car are the persons who just committed an armed robbery) indicated that it was a reasonable precaution for the protection and safety of the investigating officers." (3 LaFave, Search and Seizure §9.2, at 30 (1978).)

Several courts are in accord with this position. See *United States v. Worthington* (5th Cir. 1977), 544 F.2d 1275; *United States v. Diggs* (D.C. Cir. 1975), 522 F.2d 1310; *People v. Sanford* (1976), 34 Ill. App. 3d 990, 341 N.E.2d 453; *Commonwealth v. Ferraro* (1975), 237 Pa. Super. 268, 352 A.2d 548.

Cronin was alone when he confronted the defendant and his companion. He was not in uniform, and his handcuffs were in his car. It was four o'clock in the morning. He intended to question the defendant about a burglary during which a gun was stolen. Under these circumstances, we believe the officer was taking reasonable measures to protect himself when he approached the defendant with his gun drawn.

In further support of his contention that this was an arrest rather than an investigatory stop, the defendant points out that Cronin did not ask any questions concerning the burglary. He simply ordered the defendant to stop, retrieved a gun from his pocket, and informed him that he was under arrest. The defendant cites *People v. Talley* (1975), 34 Ill. App. 3d 506, 340 N.E.2d 167, for the proposition that where the record contains no

testimony that the officer intended to merely question the defendant or that he in fact asked the defendant any questions, the incident cannot be characterized as an investigatory stop.

When an officer intends to detain and question an individual whom he reasonably suspects is dangerous, he may conduct a limited search for weapons. (Ill. Rev. Stat. 1979, ch. 38, par. 108—1.01.) To be effective, this search may be done as soon as the stop takes place. (See *People v. McGowan* (1977), 69 Ill. 2d 73, 370 N.E.2d 537, *cert. denied* (1978), 435 U.S. 975, 56 L. Ed. 2d 69, 98 S. Ct. 1624.) The officer is not required to risk his safety by assuming that the suspect will submit peacefully to questioning. *McGowan*, 69 Ill. 2d 73, 79, 370 N.E.2d 537, 540.

■■ Here Cronin testified that he stopped the defendant because he suspected his involvement in a burglary during which a gun was stolen. He conducted a pat-down search of the defendant and found a gun. At that time, probable cause for arrest existed. (See *People v. Rose* (1979), 75 Ill. App. 3d 45, 393 N.E.2d 698; *People v. Jackson* (1979), 77 Ill. App. 3d 117, 395 N.E.2d 976; *People v. Tilden* (1979), 70 Ill. App. 3d 859, 388 N.E.2d 1046.) The need for questioning was thus obviated. In this situation, we do not believe that the absence of questions concerning the burglary precludes us from finding that this was a proper investigatory stop. In our view, the trial court correctly characterized Cronin's initial detention of the defendant as an investigatory stop rather than an arrest.

■■ The question remains whether the information known to the officer at the time was sufficient to justify the investigatory stop. Although probable cause is not necessary, the stop must be justified by " 'specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant that intrusion.' " (*People v. Fulton* (1979), 68 Ill. App. 3d 915, 923, 386 N.E.2d 605, 611.) The objective determination to be made is whether the facts available to the officer would cause a man of reasonable caution to believe the action taken was appropriate. (*People v. Moorhead* (1974), 17 Ill. App. 3d 521, 308 N.E.2d 381.) Each case involving an investigatory stop must be decided on its own facts. *People v. Williams* (1974), 57 Ill. 2d 239, 311 N.E.2d 681, *cert. denied* (1974), 419 U.S. 1026, 42 L. Ed. 2d 302, 95 S. Ct. 506.

The defendant relies primarily on *People v. Moorhead* to support his argument that the stop was unjustified. In *Moorhead* two police officers stopped the defendant nearly three hours after receiving a report of a cleaning store robbery. The defendant was walking down a crowded street approximately 2½ miles from the location of the robbery. It was 4 o'clock in the afternoon. The officers claimed the stop was justified because the defendant fit the general description of the robber and he was carrying a sweater over his arm as if he were en route to a cleaning establishment. In reversing the defendant's conviction, the court relied on

the fact that the record contained neither the information that formed the basis of the general description nor the physical characteristics of the defendant which conformed to that description. Also, the stop took place at a time and distance which were fairly remote from the reported robbery.

■■ In the case at bar, Officer Cronin was informed that a burglary had been committed by certain black males in their early twenties. Among the items taken were several articles of men's clothing. The officer was also told that the men "hung around" the Westlane Hotel, which was located only a few blocks from the site of the burglary. Unlike the defendant in *Moorhead*, who was arrested 2½ miles from the scene of the robbery, the defendant here was stopped just a few blocks from the site of the burglary at a location specifically described by the victim. Although, as noted in *Moorhead*, there is nothing unusual about walking down a crowded street in the middle of the afternoon with a sweater over one's arm, the defendant in the instant case was stopped at 4 o'clock in the morning and was carrying several items of men's clothing on a hanger draped over his shoulder. The clothes were "out in the open" and were not covered by a bag, such as a cleaner's bag. His companion was carrying what appeared to have been a filled shopping bag. While none of these facts may have alone been sufficient to create a reasonable suspicion in the mind of Officer Cronin, we believe that the totality of circumstances known to the officer provided adequate justification for the stop.

For the foregoing reasons the conviction of the defendant is affirmed.

Affirmed.

JOHNSON and LINN, JJ., concur.