THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellant, v. CHARLES E. SMITH, Defendant-Appellee.

Fifth District   No. 5—89—0064

Opinion filed February 1, 1991.

Charles Grace, State's Attorney, of Murphysboro (Kenneth R. Boyle, Stephen E. Norris, and Matthew E. Franklin, all of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

Daniel M. Kirwan and Mary M. Menard, both of State Appellate Defender's Office, of Mt. Vernon, for appellee.

JUSTICE GOLDENHERSH delivered the opinion of the court:

The People appeal the *in limine* ruling of the circuit court of Jackson County suppressing evidence illegally obtained. Although a number of issues are raised, this court finds the underlying issues to be whether the original *Terry* stop (*Terry v. Ohio* (1968), 392 U.S. 1, 20 L. Ed. 2d 889, 88 S. Ct. 1868) of defendant, Charles E. Smith, was valid, and whether the stop was properly extended. We reverse and remand.

On September 9, 1988, Carbondale police officer Richard Brunner received a "suspicious person" radio call. The dispatcher indicated that a suspicious black male was walking east, going through front and back yards and following people in the 1700 block of Old West Main.

Officer Brunner stopped defendant, who was walking east in the 1400 block of Old West Main. The officer asked for identification. Defendant indicated he had none. Defendant introduced himself and explained that he was going to his girl friend's house. When asked where she lived, defendant pointed in an easterly direction. He offered no address, but gave a description from which the officer could not determine where the girl friend lived. When asked where he had come from, defendant indicated a westerly direction. Both the place of the stop and the place of the original complaint are on possible routes between the defendant's and his girl friend's residences.

Defendant indicated that he had moved to Carbondale on January 5, 1988. He had been employed at a local nursing home, but was fired

a month before. He was not a student at Southern Illinois University, located in Carbondale.

The officer ran defendant's name and date of birth through a computer using his portable radio. He learned that defendant had no Illinois driver's license, no Illinois identification card, and no outstanding warrants.

While Brunner was still questioning defendant, Carbondale police officer John Kluge arrived on the scene as a backup. Kluge asked defendant many of the same questions and received similar answers, but questioned further. When asked about burglaries in the area, defendant indicated that he had no knowledge of them. Kluge testified that he asked defendant if he would take the officers to his residence to get identification. He agreed. Kluge further testified that he informed defendant that he was not under arrest and was free to go.

Defendant was patted down in preparation for the ride to his residence. According to Kluge, he radioed to the police station his intention to accompany defendant; the watch commander, however, radioed back that he would prefer they bring defendant to the police station for an interview with detectives. Defendant consented to the trip.

Officer Brunner did not recall asking defendant to go home for identification. Since no other record of defendant existed, Officer Brunner testified, he decided to prepare a field report on defendant. As part of the field report, Brunner asked defendant to accompany the officers to the station for fingerprints and photographs. Defendant agreed. Brunner said that as they were taking defendant to the car, the watch commander radioed.

After arriving at the police station, Kluge took background information while waiting for the detectives. He then had defendant fingerprinted and photographed. The detectives explained that they would question defendant about a rape and several "peeping Tom" calls involving a black male. Once again defendant was told that he was free to leave and was not under arrest. Defendant indicated that he understood. He was not informed of his *Miranda* rights (*Miranda v. Arizona* (1966), 384 U.S. 436, 16 L. Ed. 2d 694, 86 S. Ct. 1602) at this time.

Defendant indicated that he had no knowledge of any rapes. He said that he spent the entire night, including the time of the rape, with his girl friend. At this time, he informed the detectives that his girl friend lived on Freeman Street across from the school. The detectives recognized the area from defendant's description.

At the conclusion of the interview, the detective requested identification from defendant, who indicated that his ID was at his resi-

dence. The detectives accompanied defendant home, where he displayed a Georgia identification card. Defendant then requested a ride to his girl friend's apartment.

Upon arriving, the detectives asked defendant to remain in the car while one of them spoke with his girl friend, who did not confirm his story concerning the night of the rape.

The detective returned to the car and informed defendant that he needed to go back to the police station to answer additional questions. When they returned to the police station, the detectives read defendant his *Miranda* rights. He denied knowledge of the rapes, but admitted lying about being with his girl friend. Defendant's fingerprints taken during his first visit to the police station matched those left by the rapist. The detectives arrested defendant.

■ In general, a reviewing court will not disturb a circuit court's determination regarding suppression of evidence absent manifest error. (*People v. Industrial Salvage, Inc.* (1985), 136 Ill. App. 3d 1068, 484 N.E.2d 322.) In addition, as there are no conclusive rules to determine whether a *Terry* stop is justified, each case is judged on its particular facts. *People v. Vena* (1984), 122 Ill. App. 3d 154, 160, 460 N.E.2d 886, 891.

■ ■ The first issue we consider is whether the original *Terry* stop was valid. The United States Supreme Court held that certain investigatory stops do not rise to the level of arrest. (*Terry v. Ohio* (1968), 392 U.S. 1, 20 L. Ed. 2d 889, 88 S. Ct. 1868.) While the stop is subject to fourth amendment scrutiny (U.S. Const., amend. IV), there is a lesser degree of intrusion upon the suspect than if arrested. (392 U.S. at 26, 20 L. Ed. 2d at 909, 88 S. Ct. at 1882.) In addition, a valid *Terry* stop serves the legitimate governmental interest of preventing crime. Therefore, a police officer may briefly detain a person when he observes unusual conduct which leads him reasonably to conclude, in light of his experience, that the suspect is committing, is about to commit, or has committed a criminal act. (392 U.S. at 30, 20 L. Ed. 2d at 911, 88 S. Ct. at 1884.) The officer must be able to point to specific and articulable facts which, taken together with the rational inferences therefrom, reasonably warrant the intrusion. (392 U.S. at 21, 20 L. Ed. 2d at 906, 88 S. Ct. at 1880; *People v. Hardy* (1986), 142 Ill. App. 3d 108, 113, 491 N.E.2d 493, 497.) Section 107—14 of the Code of Criminal Procedure of 1963 (the Code) (Ill. Rev. Stat. 1987, ch. 38, par. 107—14) codifies this rule.

■ In *Terry*, the court adopted a dual analysis of investigative stops. A reviewing court must first examine whether the stop was reasonable at its inception. The court must then consider whether it

was reasonably related in scope to the circumstances which justified the stop initially. (*Terry*, 392 U.S. at 20, 20 L. Ed. 2d at 905, 88 S. Ct. at 1879.) By both case law and statute, an Illinois police officer may briefly detain a person to investigate criminal activity. *People v. Hardy* (1986), 142 Ill. App. 3d 108, 491 N.E.2d 493; Ill. Rev. Stat. 1987, ch. 38, par. 107—14.

It is clear to us that Officer Brunner was justified in stopping defendant. He had just received a "suspicious person" radio call. The call indicated that a black male was walking east going through front and back yards of the 1700 block of Old West Main. Officer Brunner stopped defendant, a black male, who was heading east in the 1400 block. As defendant fit the description and the time and place of the stop were close to the scene of the reported offense, the officer's actions were justified. The *Terry* stop was valid.

■ Officer Brunner's questions were reasonably related in scope to the circumstances which justified the interference in the first place. The officer asked defendant for identification. As he had none on him, the officer asked his name, date of birth, where he was coming from, his destination, how long he had been in Carbondale, whether he was a student at the university, where he was employed, and other similar questions. The questions were reasonable under these circumstances and are allowed by section 107—14 of the Code. Ill. Rev. Stat. 1987, ch. 38, par. 107—14.

We therefore agree with the finding of the circuit court of Jackson County holding that the original stop was a valid exercise of the police officer's authority.

The circuit court, however, also found that the additional questioning by Officer Kluge went beyond the limited intrusion permitted under *Terry*. The court believed that any suspicion concerning defendant had already dissipated. The circuit court found that the questioning should have stopped before Officer Kluge began.

Defendant argues that there was a gap between Officer Brunner's and Officer Kluge's questioning. The testimony, however, indicates a more fluid exchange. Officer Kluge apparently arrived while Brunner was in the process of questioning defendant. Being more experienced, Kluge took over and continued the questions. As he had not heard the responses to Brunner's questions, Kluge repeated a number of them. The testimony does not indicate a break in the questioning. Defendant and Officer Brunner did not complete their exchange and then wait until Kluge arrived.

■ The difference between an arrest and a stop lies in the length of time the person may be detained and the scope of investigation

which may follow the initial encounter. (*People v. Hardy* (1986), 142 Ill. App. 3d at 114, 491 N.E.2d at 498; *People v. Roberts* (1981), 96 Ill. App. 3d 930, 933-34, 422 N.E.2d 154, 156.) When an officer makes an investigatory stop, he may only detain the person for a reasonable time. If the officer's suspicions are not allayed within a reasonable time, he must either make an arrest or allow the person to leave. *Roberts*, 96 Ill. App. 3d at 934, 422 N.E.2d at 157.

■ While there is no talismanic time beyond which any stop initially justified on the basis of *Terry* becomes an unreasonable seizure under the fourth amendment (*United States v. Davies* (7th Cir. 1985), 768 F.2d 893, 901), the brevity of the stop is an important factor in determining whether the stop is unreasonable. Reviewing courts must also consider whether the police acted diligently in pursuing their investigation. *United States v. Place* (1983), 462 U.S. 696, 709, 77 L. Ed. 2d 110, 122, 103 S. Ct. 2637, 2645-46; *People v. Hardy* (1986), 142 Ill. App. 3d 108, 114, 491 N.E.2d 493, 498, citing *United States v. Sharpe* (1985), 470 U.S. 675, 686, 84 L. Ed. 2d 605, 615-16, 105 S. Ct. 1568, 1575.

■ The answers to the initial inquiries may arouse further suspicion or dispel the questions in the officer's mind. If the latter is the case, the stop may go no further and the individual should no longer be detained. If, however, the former is the case, the stop may be prolonged and the scope expanded. (*Hardy*, 142 Ill. App. 3d at 115, 491 N.E.2d at 498.) "If the officer's suspicions are not allayed within a reasonable time, he must either make an arrest or allow the person to leave." *Roberts*, 96 Ill. App. 3d at 934, 422 N.E.2d at 157.

■ We note the admonition of the Supreme Court in *Sharpe* that, while assessing the police officer's diligence in their investigation:

"A court making this assessment should take care to consider whether the police are acting in a swiftly developing situation, and in such cases the court should not indulge in unrealistic second-guessing. *** But '[t]he fact that the protection of the public might, in the abstract, have been accomplished by "less intrusive" means does not, by itself, render the search unreasonable.' *Cady v. Dombrowski*, 413 U.S. 433, 447, 37 L. Ed. 2d 706, 93 S. Ct. 2523, 2531 (1973); see also *United States v. Martinez-Fuerte*, 428 U.S. 543, 557, n.12, 49 L. Ed. 2d 1116, 96 S. Ct. 3074, 3082, n.12 (1976)." (*Sharpe*, 470 U.S. at 686-87, 84 L. Ed. 2d at 616, 105 S. Ct. at 1575-76.)

It seems to us that the stop was quite brief, and under the circumstances of this case, we believe that it was not constitutionally unreasonable for Officer Kluge to extend the questioning that had been ini-

tiated by Officer Brunner, especially in view of the rather enigmatic answers and responses that defendant had made.

●■ The officers then asked defendant to accompany them to the police station. Officer Kluge twice told defendant he was not under arrest and was free to leave, "whenever he wished." The officers did not order defendant to accompany them, nor did they place him under arrest, handcuff him, display a weapon or threaten him in any way. Defendant agreed to accompany the officers to the station. Defendant consented, and it is well settled that the constitutional protection against unreasonable searches and seizures may be waived by consent. *Schneckloth v. Bustamonte* (1973), 412 U.S. 218, 219, 36 L. Ed. 2d 854, 858, 93 S. Ct. 2041, 2043-44; *People v. Whitfield* (1986), 140 Ill. App. 3d 433, 438, 488 N.E.2d 1087, 1091; *People v. Glover-El* (1981), 102 Ill. App. 3d 535, 539, 430 N.E.2d 147, 151; *People v. Sanders* (1976), 44 Ill. App. 3d 510, 514, 358 N.E.2d 375, 378.

As the discussion above is dispositive of the case, we need not reach the issue whether the police officers had sufficient grounds to detain defendant at the police station.

For the foregoing reasons, the decision of the circuit court of Jackson County is reversed and remanded.

Reversed and remanded.

HARRISON and HOWERTON, JJ., concur.