**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

2023 IL App (3d) 210455-U

Order filed

IN THE

APPELLATE COURT OF ILLINOIS

THIRD DISTRICT

2023

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) ) | Appeal from the Circuit Court of the 21st Judicial Circuit, Kankakee County, Illinois, |
| Plaintiff-Appellee, | ) ) | |
| v. | ) ) | Appeal No. 3-21-0455 Circuit No. 17-CF-710 |
| | ) ) | Honorable |
| RAUL ZAMORA-QUINONOS, | ) ) | Clark E. Erickson and William S. Dickenson, |
| Defendant-Appellant. | ) | Judges, Presiding. |

JUSTICE BRENNAN delivered the judgment of the court.
Justices Albrecht and Davenport concurred in the judgment.

**ORDER**

¶ 1       *Held*:   The court did not err in denying defendant's motion to suppress evidence.

¶ 2       Defendant, Raul Zamora-Quinonos, appeals his convictions, arguing that the Kankakee County circuit court erred in denying his motion to suppress evidence. We affirm.

¶ 3                                    I. BACKGROUND

¶ 4       On December 15, 2017, the State charged defendant with three counts of unlawful possession of a controlled substance with intent to deliver (720 ILCS 570/401(a)(2)(C), (D),

(a)(1)(B) (West 2016)), unlawful possession of methamphetamine with intent to deliver (720 ILCS 646/55(a)(2)(E) (West 2016)), and aggravated unlawful possession of methamphetamine with intent to deliver (*id.* § 55(b)(1)(C), (b)(2)(D)). On July 26, 2018, defense counsel filed a motion to suppress evidence, arguing that the police manufactured exigent circumstances to search defendant's car and coat without probable cause.

¶ 5        On February 7, 2019, the matter proceeded to a hearing on the motion to suppress. Kankakee County Detective Earl Corbett testified that on November 30, 2017, he assisted the Drug Enforcement Agency by conducting surveillance of a residence and persons leaving that residence during an investigation. Corbett was instructed to look for a Hispanic male in possession of a large sum of money. At approximately 1 p.m., Corbett was notified that two Hispanic males exited the surveilled residence. One individual entered a car and the other entered a truck. The individual that entered the car "was carrying a jacket in *** his arm." The car left the residence first and the truck followed. Corbett was notified that the car did not yield at a stop sign and was instructed to conduct a traffic stop. Corbett stopped the car while it was waiting to turn left at an intersection. Corbett was familiar with the area surrounding the intersection. Corbett approached the driver, which was later determined to be defendant, and requested his driver's license and proof of insurance. Defendant provided a Mexican driver's license. While in the car, defendant did not make any furtive or suspicious actions and Corbett did not observe any contraband from outside the car. After defendant exited the car, Corbett observed the truck driving toward them at a high rate of speed with officers in pursuit. Officers moved defendant to the front of the car to avoid the "erratic[ly]" driving truck. The "commotion" and the dismissal of two schools had halted traffic. In the interest of safety, officers moved the investigation across the street to an empty parking lot. Defendant was not under arrest but was not free to leave due to his traffic violation. An officer

transported defendant in a police van and Corbett drove defendant's car. Corbett did not have consent or a warrant to enter the car. Corbett did not search or "pat anything down while inside" the car and only touched "[t]he steering wheel" and "gearshift." Once across the street, officers removed defendant from the van and continued the investigation. Defendant was not wearing a jacket. Corbett recalled that the weather was cold enough to wear a jacket and use heat in his car. Corbett observed that defendant was "really shaking" from being either "really cold or really nervous." At this time, Corbett saw a jacket on the passenger seat of defendant's car that he did not notice earlier. When Corbett asked defendant if he would like his jacket, defendant responded "yes." Corbett retrieved defendant's jacket from the seat and "felt a large object under *** the jacket," which he described as "a heavy something in the coat." When Corbett picked the jacket up, the object "fell out on the seat." Corbett had not touched or held the jacket previously. Corbett denied reaching "in a pocket inside the coat" and discovering the narcotics as indicated by a report completed by another officer. Corbett did not write a report. Corbett did not have consent or a warrant to search the jacket. The parties stipulated that the substance from the jacket was suspected narcotics that led to the discovery of drugs at the surveilled residence. Corbett's unmarked squad car was not equipped with dash camera video and no recording of the stop was made.

¶ 6 On cross-examination, Corbett clarified that he was in communication with other officers who informed him that defendant left the residence at approximately 1:36 p.m. and had subsequently committed a traffic violation. Corbett located defendant's car and stopped him in the left turn lane of a multi-lane intersection stoplight. There remained a second lane to continue straight or turn right. "[S]imultaneously," while officers confirmed defendant's Mexico driver's license information, Corbett observed the truck traveling "at a high [rate] of speed" toward them.

3

When Corbett asked if defendant would like his jacket, Corbett was still waiting for defendant's driver's license and insurance information. Defendant did not testify.

¶ 7　　　　The court denied defendant's motion, finding that the evidence showed that the officers properly stopped and detained him for a traffic violation. Soon after officers moved defendant to a safer location, defendant "authorized" an officer to retrieve his jacket from the car, "and when the [officer] did so there was a brick of heroin." The court also found that the timeline of events "happen[ed] rather quickly." Therefore, the court reasoned that the stop was not unduly prolonged. Separately, the court found that defendant's removal from the van created less restrictive circumstances as it related to defendant's detention and that the officer could search defendant's jacket for weapons prior to giving the jacket to defendant via a *Terry* stop (*Terry v. Ohio*, 392 U.S. 1, 21-22 (1968)).

¶ 8　　　　Defendant subsequently waived his right to a jury trial. Following a bench trial in front of a different judge, the court found defendant guilty of all charges.[1] Defendant filed a motion for a new trial, claiming, in part, that the court erred by denying his motion to suppress. The court reviewed the transcripts from the motion to suppress hearing and denied defendant's motion. Defendant appealed.

¶ 9　　　　　　　　　　　　　　　　II. ANALYSIS

¶ 10　　　　Defendant argues the circuit court erred by denying his motion to suppress evidence. Specifically, defendant contends that officers manufactured exigent circumstances and unduly prolonged the stop to (1) enter defendant's car to move its location, and (2) enter the car a second time to retrieve defendant's jacket.

---

[1]Defendant's first bench trial ended in a mistrial due to the judge retiring before completing the trial.

4

" 'On a motion to suppress, a defendant must make a *prima facie* case that the evidence was obtained by an illegal search or seizure.' *People v. Gipson*, 203 Ill. 2d 298, 306-07 (2003). 'Once the defendant makes out a *prima facie* case that a seizure was unreasonable, the burden shifts to the State to come forward with evidence to rebut.' *People v. Bass*, 2021 IL 125434, ¶ 21. The ultimate burden of proof, however, remains with the defendant." *People v. Aljohani*, 2022 IL 127037, ¶ 27

¶ 11    We apply a two-part standard when reviewing a court's ruling on a motion to suppress evidence. *People v. Grant*, 2013 IL 112734, ¶ 12. Under this standard, we give great deference to and uphold the factual findings and witness credibility determinations of the circuit court unless those findings are against the manifest weight of the evidence. *People v. Lampitok*, 207 Ill. 2d 231, 240 (2003). However, we review the ultimate legal question of whether suppression of evidence is warranted *de novo*. *Id.*

¶ 12    The federal and state constitutions protect citizens from unreasonable searches and seizures. U.S. Const., amend. IV; Ill. Const. 1970, art. I, § 6. Vehicle stops are subject to the fourth amendment's reasonableness requirement and are analyzed under the principles outlined in *Terry*, 392 U.S. at 21-22. Under *Terry*, a police officer may conduct a brief, investigatory traffic stop when the officer has a reasonable articulable suspicion to believe "that the person has committed, or is about to, commit a crime." *People v. Close*, 238 Ill. 2d 497, 505 (2010).

¶ 13    At the outset we note that, for the first time on appeal, both parties support their arguments with testimony elicited at trial that was not presented to the circuit court during the motion to suppress hearing. "When reviewing the trial court's ruling on a motion to suppress, we may consider evidence both from the trial and the suppression hearing." *People v. Eubanks*, 2019 IL

5

123525, ¶ 61. We may use trial testimony to *affirm* the circuit court's denial of a motion to suppress. *People v. Murdock*, 2012 IL 112362, ¶ 36. However, this reasoning does not " 'appl[y] equally when a defendant is asking us to rely upon trial evidence to reverse a trial court's decision on a pretrial suppression ruling.' " *Id.* (quoting *People v. Brooks*, 187 Ill. 2d 91, 127-28 (1999)). To the extent specific testimony was not presented at the hearing, we do not consider it in support of defendant's appeal. *Id.* ¶ 38.

¶ 14                               A. Initial Entry

¶ 15        Defendant first contends that officers created exigent circumstances by stopping defendant's car in a manner that did not allow him to park his car safely, manufacturing an opportunity to enter defendant's car and conduct a search.

¶ 16        Here, officers reasonably stopped defendant's car when it was already stopped in the left turn lane of an intersection with another lane remaining open for traffic. Corbett decided to move defendant's car and the investigation to a safer location after the truck led a high-speed chase directly past the investigation. This unforeseen occurrence, in combination with the two schools letting out at the time of the stop, caused an unsafe environment for an investigation. See *cf. People v. Buffo*, 202 Ill. App. 3d 240, 242 (1990). There was no evidence that Corbett used these events as a ruse to move the investigation to a different location. While Corbett was familiar with the area, it is unlikely that Corbett could have predicted that a high-speed chase would occur at the same time as the schools letting out to manufacture an opportunity to enter defendant's car.

¶ 17        We reject defendant's assertion that we should "infer[ ] that Corbett *** had the opportunity to at least pat down the coat to determine if it concealed weapons or contraband outside the view of any witnesses," and conclude that Corbett conducted an improper search, which compelled Corbett to manufacture the second set of exigent circumstances. This conclusion is not

6

supported by Corbett's testimony where he specifically stated that he did not search or "pat anything down while inside" the car, only touched "[t]he steering wheel" and "gearshift," did not notice the jacket until after he observed defendant shaking, and did not touch the jacket until he retrieved it from the car. Defendant failed to present any evidence that the initial entry into defendant's car resulted in an improper search or the discovery of contraband. See *cf. id.* at 240-42 (following defendant's arrest, the officer entered defendant's vehicle to move it to a legal parking space and discovered a firearm by the gas pedal). Importantly, the court denied defendant's motion, implicitly finding Corbett's testimony credible. See *People v. Reed*, 2020 IL 124940, ¶ 51 (the circuit court, as the finder of fact at a hearing, makes credibility determinations and weighs the evidence). Given the lack of evidence to the contrary, we defer to the court's credibility determination as we cannot find the determination against the manifest weight of the evidence. See *Lampitok*, 207 Ill. 2d at 240. The officer's initial entry into defendant's car was not an improper search in violation of the fourth amendment.

¶ 18                                    B. Second Entry

¶ 19        Next, defendant contends that the officers contrived circumstances to enter defendant's car a second time. Specifically, he states that the officers removed defendant from the van and made him "stand in the cold for an indeterminate time," which led defendant to be "vulnerable to consenting." Defendant essentially argues that he was "under duress" when he answered he would like his jacket from the car.

¶ 20        Consent to search must be voluntary, in that " 'the consentor must have been under no duress or coercion, actual or implied, and the consent must have been unequivocal, specific, and freely and intelligently given.' " *People v. Cardenas*, 237 Ill. App. 3d 584, 586 (1992) (quoting *People v. Purchase*, 214 Ill. App. 3d 152, 155 (1991)). " '[T]o determine if in fact the consent to

7

search was coerced, account must be taken of subtly coercive police questions, as well as the possibly vulnerable subjective state of the person who consents.' " *People v. Anthony*, 198 Ill. 2d 194, 202 (2001) (quoting *Schneckloth v. Bustamonte*, 412 U.S. 218, 229 (1973)).

¶ 21    Here, Corbett observed that defendant was cold and asked defendant if he wanted his jacket. Defendant responded "yes," indicating that Corbett could retrieve his jacket from the car. If defendant did not want Corbett to retrieve his jacket, he easily could have responded "no." The court found credible Corbett's testimony that he had not touched the jacket before retrieving it from the car and that he did not reach into the pocket of the jacket. *Supra* ¶¶ 5, 17. Given the record before us, we cannot say that the court's credibility finding was against the manifest weight of the evidence. See *Lampitok*, 207 Ill. 2d at 240. Where the officer was credible, and in the absence of evidence that circumstances leading to defendant's removal from the police van were maliciously manufactured, we find that the officer did not contrive a situation to coerce defendant to accept his offer to retrieve defendant's jacket. Therefore, the officer's second entry into defendant's car was not an improper search in violation of the fourth amendment.[2]

¶ 22    We reject defendant's contention that defendant's removal from the van created less restrictive circumstances. First, we note that defendant failed to provide any support for his contention that less restrictive circumstances is a factor to be considered in the analysis of consent. See *People v. Edwards*, 2012 IL App (1st) 091651, ¶ 29. Second, even if we considered less restrictive circumstances as a factor, we cannot say that, under these circumstances, leaving defendant in the van would have created less restrictive circumstances than removing him.

---

[2]Because " '[t]he question before a reviewing court is the correctness of the result reached by the lower court and not the correctness of the reasoning upon which that result was reached,' " we may affirm for any basis in the record. *Aljohani*, 2022 IL 127037, ¶ 28 (quoting *People v. Novak*, 163 Ill. 2d 93, 101 (1994) (*abrogated on other grounds by People v. Kolton*, 219 Ill. 2d 353 (2006))). Therefore, we need not address the court's finding that the circumstances warranted a *Terry* search of defendant's jacket when it denied defendant's motion.

¶ 23                                              C. Length of Stop

¶ 24          Lastly, defendant argues that the officers unduly prolonged the stop. We find that the evidence shows that the officers "acted diligently in pursuing their investigation" given the circumstances. *People v. Smith*, 208 Ill. App. 3d 44, 50 (1991). A lawful seizure "can become unlawful if it is prolonged beyond the time reasonably required to complete [the stop's] mission." *Illinois v. Caballes*, 543 U.S. 405, 407 (2005); *Arizona v. Johnson*, 555 U.S. 323, 333 (2009) (a seizure remains lawful only so long as unrelated inquiries do not "measurably extend" the duration of the stop). Here, defendant does not contest the propriety of the initial stop of his car. The remaining testimony showed that, at the time of the high-speed chase and two schools letting out, officers were in the process of confirming whether defendant had a valid license and insurance. Moreover, defendant failed to meet his burden to show that officers improperly prolonged the traffic stop by failing to present any evidence of the duration of the stop or a clear timeline of events to support his claim. See *Aljohani*, 2022 IL 127037, ¶ 27. While there was no video recording to either support or refute defendant's contention, it was defendant's burden to elicit approximations for the duration of the stop, in whole and in part. That defendant became cold during the stop, alone, is insufficient to show that the officers unduly prolonged the stop. Defendant failed to show that the length of the stop was unreasonable under the circumstances, and thus, an unreasonable search and seizure under the fourth amendment. See *Caballes*, 543 U.S. at 407.

¶ 25          Based on the foregoing, we find that the court properly denied the motion to suppress.

¶ 26                                              III. CONCLUSION

¶ 27          The judgment of the circuit court of Kankakee County is affirmed.

¶ 28          Affirmed.