# ILLINOIS OFFICIAL REPORTS

## Appellate Court

---

*People v. Sundling*, 2012 IL App (2d) 070455-B

---

| | |
|---|---|
| Appellate Court Caption | THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. JOSEPH E. SUNDLING, Defendant-Appellant. |
| District & No. | Second District<br>Docket No. 2-07-0455 |
| Filed | January 31, 2012 |
| Rehearing denied | February 24, 2012 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | Pursuant to a supervisory order of the Illinois Supreme Court, the appellate court vacated its judgment upholding defendant's convictions for aggravated criminal sexual abuse over his claims that hearsay evidence and prior convictions were improperly admitted, that his right to confront witnesses was violated and that his counsel was ineffective, and upon reconsidering the decision in light of the supreme court's decision in *Kitch*, holding that the direct testimony of the minor victims in that case was sufficient to establish the elements of the charges and allow for effective cross-examination, the appellate court again affirmed defendant's convictions. |
| Decision Under Review | Appeal from the Circuit Court of De Kalb County, No. 04-CF-0733; the Hon. Robbin J. Stuckert, Judge, presiding. |
| Judgment | Affirmed. |

Counsel on
Appeal

Patricia Unsinn, Alan D. Goldberg, Michele D. Morris, and Heidi Linn Lambros, all of State Appellate Defender's Office, of Chicago, for appellant.

Ronald G. Matekaitis, State's Attorney, of Sycamore (Robert J. Biderman and Anastacia R. Brooks, both of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

Panel

JUSTICE BURKE delivered the judgment of the court, with opinion.
Presiding Justice Jorgensen and Justice Birkett concurred in the judgment and opinion.

## OPINION

¶ 1    Following a bench trial, defendant, Joseph E. Sundling, was convicted of two counts of aggravated criminal sexual abuse (720 ILCS 5/12-16(c)(1)(i) (West 2004)) and was sentenced to a term of 20 years' imprisonment with a lifetime term of mandatory supervised release. On appeal, defendant raises a number of issues regarding the admission of hearsay evidence, the admission of prior convictions, the denial of his sixth amendment right to confrontation, and ineffective assistance of counsel.

¶ 2    We already have issued a decision in this appeal, rejecting defendant's contentions and affirming the trial court's judgment. *People v. Sundling*, No. 2-07-0455, slip order at 26 (2009) (unpublished order under Supreme Court Rule 23) (*Sundling I*). The supreme court, however, in the exercise of its supervisory authority, has directed us to vacate our judgment and to reconsider it in light of *People v. Kitch*, 239 Ill. 2d 452 (2011), to determine if a different result is warranted. *People v. Sundling*, 2011 IL 109619. Accordingly, we vacate our judgment and, after reconsidering our decision in light of *Kitch*, we arrive at the same conclusions as before. Therefore, we again affirm the trial court's judgment.

¶ 3                                    FACTS

¶ 4    On November 23, 2004, defendant was indicted on two counts of aggravated criminal sexual abuse. The indictment alleged that defendant, being over the age of 17, committed an act of sexual conduct with M.D.B. (count I) and J.M.H. (count II), both of whom were under the age of 13 when the acts were committed, in that defendant knowingly fondled the penis of each minor for the purpose of the sexual gratification of defendant.

¶ 5    Following a hearing pursuant to section 115-10 of the Code of Criminal Procedure of 1963 (Code) (725 ILCS 5/115-10 (West 2006)), the trial court determined that out-of-court

statements that M.D.B. had made to his mother, Tina, and to Detective Roger Plant were admissible. The court found that the time, content, and circumstances under which the statements were made provided sufficient safeguards of reliability for their admission. It found that the version of events that M.D.B. shared with his mother and with the detective on videotape, as well as M.D.B.'s notations on a drawing, were substantially consistent. The court also determined that neither Tina nor Plant prompted or manipulated M.D.B. and that Plant asked leading questions only to clarify certain details. The court also found that the evidence was void of any motive to lie, that M.D.B.'s statements were in response to questions, and that his demeanor appeared to be age appropriate.

¶ 6     At trial, C.I., M.D.B.'s brother, testified that, sometime in November 2002, he was playing in the basement of his house with M.D.B. and his cousins, including J.M.H. While they were in the basement, defendant came downstairs alone and began wrestling with them. C.I. remembered seeing defendant throw M.D.B. on the waterbed and that defendant tickled M.D.B. while saying, "tickle here, tickle there," and then touched M.D.B.'s penis. The touching occurred over M.D.B.'s underwear. C.I. remembered that M.D.B. wore a shirt and underwear and that J.M.H. wore a shirt and a diaper. C.I. also saw defendant tickle M.D.B. on the stomach and armpit. C.I. stated that defendant picked up J.M.H. and threw him on the waterbed and tickled him. C.I. stated that defendant then reached underneath J.M.H.'s diaper and told J.M.H. about three times that he was "going to get your penis." The other cousins called defendant a faggot. All the cousins jumped on defendant's back. Before defendant went upstairs, he said, "Don't say anything." Approximately two months later, C.I. told his mother about the incident after his mother asked him. C.I. stated that he did not tell her sooner because he was scared.

¶ 7     M.D.B., who was four years old at the time of the incident and eight during the trial, testified that he remembered meeting "someone named Joe" and that, one day, he wrestled with him along with his cousins J.M.H., T., and Z. When asked what he remembered about the wrestling, M.D.B. stated that he really did not remember. He did remember defendant touching him but not where he was touched. When prompted further, M.D.B. replied again that he could not remember.

¶ 8     Plant testified about his videotaped interview with M.D.B. He initiated investigating defendant based on Tina's suspicions after she learned that defendant was a convicted sex offender. Plant knew about the accusations prior to interviewing M.D.B. Defendant objected to the admission of the videotaped interview. The trial court overruled the objection and the videotape was played for the court.

¶ 9     The State asked Plant about the drawing in which M.D.B. circled the area where defendant had touched him and J.M.H. The circles were drawn on the genital area, the left hand, and the center of the back. Defendant objected to the drawing being admitted into evidence, arguing that the drawing was misleading because it showed a naked boy and there was no evidence that either of the boys in the present case was naked. The court overruled the objection and admitted the drawing into evidence.

¶ 10    Plant testified that M.D.B. had hesitated to answer some of the questions during the interview and sometimes appeared to answer questions in order to satisfy Plant. Plant

testified that M.D.B. did not hesitate to point to his penis as the place where defendant had touched him.

¶ 11     Tina testified that defendant came to her house about four times over a three-week period in November 2002. The third time that defendant visited, he brought toy trucks for the children. During that visit, he also sought permission from Tina to take her children and her nephews, N., T., Z., and J.M.H. to the movies and a motel. Tina did not allow the boys to go. On his fourth visit, defendant played alone with T., Z., C.I., M.D.B., and J.M.H. in the basement. At the time, Tina was upstairs on the first floor with her sister-in-law, Christy.

¶ 12     In January 2003, about two months after defendant had been alone with the children in the basement, Tina developed some concerns about how defendant might have interacted with them, which prompted her to speak to them. Tina first talked to M.D.B., who was playing in his bedroom. Although she did not remember her exact words, Tina basically asked M.D.B. if he remembered defendant. M.D.B. responded yes. Tina then asked him if anything had ever happened with defendant that she needed to know about. M.D.B. would not answer, and Tina directly asked if defendant had ever touched him inappropriately. M.D.B. replied that defendant had touched J.M.H. and he pointed to his own penis.

¶ 13     Tina then drove to see C.I., who was in school. She took him out of school and, on the way to the car, Tina asked him the same basic question that she had asked M.D.B.: had defendant ever done anything inappropriate to him. C.I. responded no but said that defendant did something inappropriate to J.M.H. and M.D.B. C.I. told Tina that defendant was tickling M.D.B. and J.M.H. and saying "I'm going to get your penis."

¶ 14     When she returned home, Tina talked to M.D.B. again. She told him that she needed to know if defendant had ever touched him. M.D.B. did not answer. After two minutes, Katherine, Tina's mother-in-law, came into the room and told M.D.B. that this was very important and that he needed to tell them if defendant had ever done anything to him. Tina stated that M.D.B. screamed "no" and ran out of the room. (At the pretrial hearing, Tina stated that M.D.B. yelled "yes." However, on cross-examination, Tina stated that Katherine actually "got [M.D.B.] to say that [defendant] touched him and his penis.") After that, he would not talk about it and Tina went to the police station to report what she had learned.

¶ 15     Kim, J.M.H.'s mother, testified about the conversation she had with defendant that was recorded on January 15, 2003, and was played at trial. It revealed the following. Kim told defendant that she was calling about a time when defendant "was downstairs playing with the boys" at Tina's. Kim told defendant that the boys said that he tickled their penises while wrestling. Defendant told her that he recalled wrestling with the boys but did not remember touching their penises. Defendant told Kim that, if that had happened, it was inadvertent. Defendant said to Kim that she knew about defendant's prior history with children and that it was her family that told him not to inform others. Defendant admitted his attraction to children, but he told Kim that he would not have been attracted to J.M.H. because J.M.H. was not circumcised. Kim asked him how he knew that. Defendant replied that he had seen Kim bathe J.M.H. many times.

¶ 16     Kim testified that defendant was never with her when she bathed J.M.H. or changed his diapers. She explained that J.M.H. had been circumcised as a baby but that it appeared as if

-4-

he had not been.

¶ 17 Detective Michael Stewart testified that he took over the investigation in 2004, after Plant left the De Kalb police department. On January 5, 2004, he and another officer went to defendant's home to question him about the incident at Tina's home. Stewart testified that, when he questioned defendant about the children who were in the basement, defendant "categorically denied" ever touching them for sexual purposes.

¶ 18 Defendant testified on his own behalf. He stated that he visited Tina's home several times in November 2002 to see his friend Jimmy. Jimmy is J.M.H.'s father and was living in Tina's basement at the time. Defendant remembered bringing toys for the children and a camera for Tina one day in November. Defendant stated that these items were "giveaways" from his work. Defendant also admitted that he had asked Tina if he could take the children to a movie. Defendant stated that he jokingly asked if he could take the boys to a hotel because they had asked him if they could come swimming at the hotel where he was staying.

¶ 19 Defendant remembered that he had gone down to the basement one day in November with Jimmy. Jimmy was preparing J.M.H. for bed. Other children were in the basement playing, including C.I., M.D.B., and Z. Some were watching television and others were wrestling on a waterbed. Defendant stated that both he and Jimmy joined the wrestling by throwing the kids down on the waterbed. Defendant said that he was in the basement for 15 to 20 minutes. He testified that he left the basement before the boys, to find Jimmy upstairs.

¶ 20 Defendant admitted on cross-examination that he was alone in the basement with the boys. Defendant stated that it was possible that he might have brushed up against the boys' genital areas while he was wrestling with them but that it was not his intent to commit any kind of sexual act. The boys were dressed when he wrestled with them.

¶ 21 Defendant testified that he remembered a telephone conversation with Kim, who asked him if anything had happened in the basement. Defendant told her that nothing had happened. Kim asked him how he knew that J.M.H. was not circumcised and defendant told her that he had seen him running around naked several times after he swam in the pool in the backyard.

¶ 22 Defendant testified that he informed Kim and her sister, Phyllis, about his prior convictions because he was often in their house. On cross-examination, defendant admitted that he was sexually attracted to young boys and that he had sexual urges to have contact with the penises of young boys. He stated that he was aware of this when he was wrestling with the victims. Defendant denied that he was attracted to boys as young as three.

¶ 23 Following closing argument, the trial court found defendant guilty of aggravated criminal sexual abuse as to both M.D.B. and J.M.H. Thereafter, the trial court sentenced defendant to 20 years' imprisonment. Defendant filed no posttrial motions.

¶ 24                                                    ANALYSIS
¶ 25 Preliminarily, because his counsel did not file a posttrial motion, defendant requests that we review the issues he presents on appeal under the plain-error exception to the forfeiture rule. The plain-error doctrine bypasses normal forfeiture principles and allows a reviewing

court to consider unpreserved error when either (1) the evidence is close, regardless of the seriousness of the error, or (2) the error is serious, regardless of the closeness of the evidence. *People v. Herron*, 215 Ill. 2d 167, 187 (2005). Under the first prong, the defendant must prove "prejudicial error." That is, the defendant must show both that there was plain error and that the evidence was so closely balanced that the error alone severely threatened to tip the scales of justice against him. Under the second prong, the defendant must prove that there was plain error and that the error was so serious that it affected the fairness of the defendant's trial and challenged the integrity of the judicial process. *People v. Piatkowski*, 225 Ill. 2d 551, 565 (2007). Prejudice to the defendant is presumed because of the importance of the right involved, "*regardless* of the strength of the evidence." (Emphasis in original.) *People v. Blue*, 189 Ill. 2d 99, 138 (2000).

¶ 26     We thus decide whether the trial court committed error and, if so, whether the evidence was so closely balanced that the error alone severely threatened to tip the scales of justice against defendant, or whether the error was so serious that it affected the fairness of the trial and challenged the integrity of the judicial process.

¶ 27              Admissibility of M.D.B.'s Hearsay Statements Under Section 115-10

¶ 28     Defendant first contends that M.D.B.'s out-of-court statements to Tina and Plant were improperly admitted into evidence, because they did not possess sufficient indicia of reliability or trustworthiness required by section 115-10 of the Code (725 ILCS 5/115-10 (West 2008)), the statutory exception to the hearsay rule. Defendant objected to the admission of M.D.B.'s hearsay statements at trial and, relying on *People v. Segoviano*, 189 Ill. 2d 228 (2000), he requests that we relax the forfeiture of this issue, even though he failed to file a posttrial motion.

¶ 29     In *Segoviano*, because the issues were brought to the attention of the trial court, were ruled on by the trial court while the court retained jurisdiction over the matter, and involved the potential of substantial prejudice to the defendant, the supreme court relaxed the forfeiture rule and addressed the defendant's cross-appeal. *Segoviano*, 189 Ill. 2d at 244. We conclude that, whether or not the forfeiture of this issue is relaxed, we consider the substance of defendant's argument in any event, based on a plain-error analysis. See *People v. Naylor*, 229 Ill. 2d 584, 593 (2008).

¶ 30     Section 115-10 provides in relevant part that hearsay statements made by a victim under 13 years of age are admissible only if the time, content, and circumstances of the statements provide sufficient safeguards of reliability. 725 ILCS 5/115-10(b)(1) (West 2008); *People v. Zwart*, 151 Ill. 2d 37, 44 (1992). There are no precise tests for evaluating trustworthiness or reliability, but rather particularized guarantees of trustworthiness must be drawn from the totality of the circumstances surrounding the victim's statements. *People v. West*, 158 Ill. 2d 155, 164 (1994); *People v. Back*, 239 Ill. App. 3d 44, 57 (1992); *People v. McMillan*, 231 Ill. App. 3d 1022, 1025 (1992).

¶ 31     Important factors in making the determination of reliability include the child's spontaneous and consistent repetition of the incident, the child's mental state, the use of terminology unexpected of a child of a similar age, and the lack of a motive to fabricate.

*People v. Bowen*, 183 Ill. 2d 103, 120 (1998); *West*, 158 Ill. 2d at 164. A trial court has considerable discretion in admitting hearsay statements. Thus, a reviewing court will not disturb a trial court's decision absent an abuse of discretion. *Zwart*, 151 Ill. 2d at 44.

¶ 32 The trial court held that the content and circumstances of M.D.B.'s out-of-court statements provided sufficient safeguards of reliability for admission when considering the totality of the circumstances. The court noted that the statements were in response to Tina's questions occasioned by defendant's statements that he had done things to children in the past. The court found that the version of events that M.D.B. shared with his mother and the detective, as evidenced by the videotape and the minor's notations on the drawing, were substantially consistent, that the taped interview demonstrated that Plant did not coach M.D.B. on what to say, and that Plant asked leading questions only to clarify certain details. The court observed that, when M.D.B. told his mother that defendant had touched his penis, she did not initiate further conversations with M.D.B. but told him that he would be talking to the police about the alleged abuse. The court also considered that the evidence was void of any motive to lie about the alleged abuse, remarking that the children considered defendant to be a friend. It also concluded that M.D.B.'s demeanor, responses to questions, and use of terminology were age appropriate.

¶ 33 Defendant relies on *Zwart* for the proposition that a statement given five weeks after the alleged abuse is unreliable and inadmissible under section 115-10. Defendant asserts that in *Zwart* the court found that the timing of the victim's statements (made five weeks after the incident), standing alone, made the statements unreliable. *Zwart*, 151 Ill. 2d at 46. Defendant's reliance on *Zwart* for this proposition is incorrect.

¶ 34 In *Zwart*, the victim was three years old and did not testify at trial. She made the statements some four to five weeks after the alleged abuse occurred, after she had been interviewed by several investigators and medical personnel. *Zwart*, 151 Ill. 2d at 44-45. While the supreme court in *Zwart* found the timing to be a factor, it did not rely solely on the timing. The court stated, "[T]he timing of the victim's statements, standing alone, does not make the statements unreliable." *Zwart*, 151 Ill. 2d at 46. The court ultimately reversed because there was no evidence of the prior interviews and, without such evidence, the court found it impossible for the trial court to have determined whether the victim was questioned suggestively or encouraged to accuse the defendant of sexual abuse. *Zwart*, 151 Ill. 2d at 44-45. The court observed that such evidence was particularly important in that case because the victim's age made her particularly susceptible to suggestion, and the defendant was unable to question the victim about the circumstances of the interviews because she did not testify at trial. *Zwart*, 151 Ill. 2d at 45.

¶ 35 Aside from the timing of the statements in the present case, none of the other circumstances that the supreme court found important in *Zwart* are present here. M.D.B. testified at trial and defendant could have cross-examined him. In *Zwart*, there was evidence that the victim's mother had argued with the defendant a day or two before the victim first made her allegations. See *Zwart*, 151 Ill. 2d at 40. Here, defendant has not suggested that either Tina, C.I., or Plant had any motive to encourage M.D.B. to lie about defendant. In fact, as the trial court noted, the children considered defendant to be a friend.

¶ 36    Moreover, unlike in *Zwart*, through testimony the trial court was able to examine the extent of the adult intervention. Tina's questions to M.D.B., who was four years old at the time, were not suggestive of anything untoward. Tina repeated her question during the initial interview with M.D.B. only because he appeared more interested in playing and did not respond. As stated in *Zwart*, courts recognize that child victims of sexual abuse are often hesitant to discuss the abuse with anyone other than their mothers. *Zwart*, 151 Ill. 2d at 46. Given that a child might be unwilling to discuss his own traumatic experience, the question that Katherine finally asked M.D.B. seemed necessary for M.D.B. to overcome his reluctance to discuss his own traumatic experience.

¶ 37    Defendant argues that M.D.B.'s statements, made after a five-week delay, were unreliable because they lacked spontaneity. Although M.D.B.'s first statement to his mother was not made until approximately five weeks after the abuse occurred, the trial court had the discretion to conclude that the timing of his statements, given M.D.B.'s age and his initial reluctance to discuss the abuse, did not make the statements unreliable.

¶ 38    Defendant asserts that M.D.B.'s statements were made only after significant adult intervention, including incessant questioning by M.D.B.'s family and leading questions from Plant. Defendant also asserts that M.D.B. made the statements to Plant to placate him. The fact that a victim's statements are the result of questioning does not necessarily destroy their admissibility. *People v. Branch*, 158 Ill. App. 3d 338, 342 (1987).

¶ 39    After reviewing the taped interview, we agree with the trial court's assessment that Plant did not prompt or manipulate M.D.B. into disclosing that defendant touched his penis. Plant used open-ended questions and never suggested to M.D.B. that M.D.B. physically identify his own private area as the place where defendant had touched him. He asked only whether M.D.B. knew someone by the name of Joe, who was Joe, whether Joe had ever touched him somewhere that he did not like being touched, and where Joe touched him; whereupon M.D.B. pointed to his groin and later drew a circle on a figure to indicate where he had been touched. Plant did state that there were "times in the tape I thought [M.D.B.] was giving answers to satisfy me." However, contrary to defendant's assertion, Plant denied that this occurred when M.D.B. pointed to his groin as the place where defendant had touched him. We note that, because this particular testimony occurred during the trial, it should not be considered when reviewing the propriety of the trial court's pretrial ruling. See *People v. Monroe*, 366 Ill. App. 3d 1080, 1086 (2006).

¶ 40    Defendant claims that M.D.B.'s statements were inconsistent, because he changed his story about where J.M.H. was touched, first indicating on the forehead and later on the back. We find this inconsistency minor. Of importance is that M.D.B. never wavered from his position that defendant touched his penis and J.M.H.'s.

¶ 41    Defendant asserts that M.D.B. denied multiple times being touched before he indicated that he was abused. M.D.B. denied only once that defendant had touched him; the other times he ignored his mother's questions. Moreover, this action could be viewed as reasonable based on M.D.B.'s age and reluctance to discuss the abuse. See *Zwart*, 151 Ill. 2d at 46.

¶ 42    *People v. Simpkins*, 297 Ill. App. 3d 668 (1998), and *People v. McMillan*, 231 Ill. App. 3d 1022 (1992), cases upon which defendant relies, are distinguishable from the present case.

In *Simpkins*, the victim had recanted her allegations and admitted that she had lied. *Simpkins*, 297 Ill. App. 3d at 678. The victim previously had been interviewed by a counselor about the sexual abuse of a sibling. The court clearly was concerned that professional investigators might be tempted to encourage very young children to make unfounded allegations through the use of suggestive questioning techniques. *Simpkins*, 297 Ill. App. 3d at 677-78. No such concerns are present here, where M.D.B. first reported the alleged abuse to his mother, he did not recant, and no suggestive questioning techniques were used.

¶ 43 In *McMillan*, the trial court suppressed hearsay statements that a six-year-old child made to an investigator and disqualified him from testifying. The State appealed the suppression of the hearsay statements. Applying what is now considered the wrong standard of review (see *Zwart*, 151 Ill. 2d at 44 (abuse of discretion)), the Appellate Court, Fifth District, held that the exclusion of the hearsay statements was not against the manifest weight of the evidence. *McMillan*, 231 Ill. App. 3d at 1033. In finding the hearsay statements unreliable, the appellate court relied on the victim's motive to fabricate and his incompetence as a witness. The court also relied on the trial court's assessment of the credibility of the witnesses, because the record lacked a recording of the interview. *McMillan*, 231 Ill. App. 3d at 1032-33.

¶ 44 In light of the circumstances–M.D.B.'s age, the fact that his statements were substantially consistent with C.I.'s account, that he did not recant, and that the statements were not induced by leading questions or manipulation–we cannot say that the trial court abused its discretion in finding them admissible under section 115-10. Because we find that the trial court did not abuse its discretion, we need not proceed to further analysis under the plain-error doctrine.

¶ 45 Violation of Defendant's Right to Confront M.D.B.

¶ 46 At the trial, M.D.B. testified that he remembered meeting defendant about four years before and remembered defendant wrestling with him and his cousins in the basement. However, M.D.B. could not remember where defendant touched him when they wrestled or whether defendant said anything to him while they were playing. When the prosecutor asked again about the incident, M.D.B. said that he did not remember. Defense counsel did not cross-examine M.D.B. Over defense counsel's objections, the trial court permitted the State to introduce M.D.B.'s videotaped statements to Plant where M.D.B. told Plant that defendant touched his penis and that defendant touched J.M.H. on his back.

¶ 47 In *Sundling I*, defendant asserted that, even if the statements that M.D.B. made during the videotaped interview with Plant and the drawing on which M.D.B. circled where defendant had touched him were admissible under section 115-10, the admission of this evidence violated his right to confrontation under *Crawford v. Washington*, 541 U.S. 36 (2004), because at trial M.D.B. could not remember the event or making the statements. Whether a defendant's constitutional right to confrontation has been violated is a legal issue subject to *de novo* review. *People v. Leeper*, 317 Ill. App. 3d 475, 480 (2000).

¶ 48 In deciding whether defendant's constitutional right to confrontation was violated, we relied on this court's opinion of *People v. Garcia-Cordova*, 392 Ill. App. 3d 468 (2009)

(*Garcia-Cordova I*). In *Garcia-Cordova I*, like here, the victim could not recall or remember the details of the sexual abuse. Because the victim could not recall or remember the details of the sexual abuse, we held that the victim's testimony fell within the memory-loss rule pronounced in *United States v. Owens*, 484 U.S. 554 (1988), *Delaware v. Fensterer*, 474 U.S. 15 (1985), and *People v. Flores*, 128 Ill. 2d 66 (1989). *Garcia-Cordova I*, 392 Ill. App. 3d at 483-84. In *Flores*, our supreme court held, in applying *Fensterer* and *Owens*, that a gap in a witness's recollection concerning the content of a prior statement does not necessarily preclude an opportunity for effective cross-examination. *Flores*, 128 Ill. 2d at 88. Thus, we concluded in *Garcia-Cordova I* that the victim was available for cross-examination purposes because she appeared at trial and testified under oath. She made an in-court identification of the defendant; she recalled speaking with an investigator from the Department of Children and Family Services (DCFS) and recalled that a policeman was present when she spoke with the investigator; she remembered that she made drawings during her meeting with the investigator; she identified some of the drawings during her testimony; and, although the victim did not recall what activities were depicted in the drawings, or why she made them, she answered all of the prosecutor's questions on that subject. *Garcia-Cordova I*, 392 Ill. App. 3d at 484. Although the defendant chose not to cross-examine the victim, we could not conclude that the victim was unavailable to cross-examine, had the defendant chosen otherwise. *Garcia-Cordova I*, 392 Ill. App. 3d at 484.

¶ 49    Employing the memory-loss rule set forth in *Garcia-Cordova I,* we determined that it applied to M.D.B. as well because M.D.B., like the victim in *Garcia-Cordova I*, could not recall some of the details of his encounter with defendant. *Sundling I*, slip order at 17. Thus, we held that defendant's sixth amendment right to confrontation was not violated, as M.D.B. was available for cross-examination purposes because he testified under oath at trial and answered the questions put to him on the subject. *Sundling I*, slip order at 17.

¶ 50    On the same date that the supreme court issued a supervisory order to vacate *Sundling I*, it also ordered us to vacate *Garcia-Cordova I* and reconsider it in light of *Kitch*. Upon reconsideration, we determined that *Kitch* did not require a different result than the one we initially reached. *People v. Garcia-Cordova*, 2011 IL App (2d) 070550-B, ¶ 1 (*Garcia-Cordova II*).

¶ 51    In *Kitch*, the defendant was convicted of nine counts of predatory criminal sexual assault and one count of aggravated criminal sexual abuse. *Kitch*, 239 Ill. 2d at 455. The evidence included testimonial out-of-court statements that the child victims, K.J.K. and M.J.B., had made to a sheriff, one of his employees, and an obstetric gynecologist. *Kitch*, 239 Ill. 2d at 456-57.

¶ 52    Pursuant to section 115-10 of the Code, the trial court held that the testimonial out-of-court statements made by the victims to the sheriff and one of his employees were admissible at trial if the children testified. *Kitch*, 239 Ill. 2d at 456. The sheriff and his employee testified at trial to the victims' statements. *Kitch*, 239 Ill. 2d at 457-58. The obstetric gynecologist, who had examined one of the victims, testified that it was highly likely that the victim had been abused. *Kitch*, 239 Ill. 2d at 456-57. Forensic scientists testified that a semen stain on one victim's comforter matched the defendant's DNA profile. *Kitch*, 239 Ill. 2d at 459.

¶ 53    Both victims testified consistently with their out-of-court statements. *Kitch*, 239 Ill. 2d at 458-60. The defendant argued to the supreme court that the victims had not "appeared" for cross-examination purposes as contemplated by the confrontation clause, because "the State failed to ask [the victims] 'about each incident in enough detail to establish each and every element of every count,' and [the defendant] was unable to engage in effective cross-examination." *Kitch*, 239 Ill. 2d at 460. The defendant relied on this court's decision in *People v. Learn*, 396 Ill. App. 3d 891 (2009), for the proposition that the victims must give accusatory testimony.

¶ 54    The supreme court held that both victims' testimony corresponded to the allegations in the relevant counts of the charges against the defendant, stating:

    "Accordingly, K.J.K.'s and M.J.B.'s direct testimony, standing alone, was sufficient to establish the elements of the relevant counts against defendant. We also conclude, largely for this reason, that K.J.K.'s and M.J.B.'s direct testimony was sufficient to allow for effective cross-examination. Their direct testimony provided enough detail to allow for cross-examination within the meaning of the confrontation clause. Our review of the record shows that both K.J.K. and M.J.B. answered all of the questions put to them by defense counsel on cross-examination. Their answers were forthright. There was no indication they were being evasive." *Kitch*, 239 Ill. 2d at 464.

¶ 55    The *Kitch* court held that the victims' direct testimony was sufficient to establish the elements of the charges against the defendant and, as such, was sufficient to allow for effective cross-examination. *Kitch*, 239 Ill. 2d at 464. The supreme court then stated that there was nothing in the decision in *Learn* that compelled a different result. *Kitch*, 239 Ill. 2d at 464. As stated, the defendant relied on *Learn* as authority regarding the issue of whether a witness is "available" for cross-examination. The supreme court distinguished the facts in *Kitch*, where through their direct testimony the victims accused the defendant of multiple acts of sexual abuse, from those in *Learn*, where the victim said that she did not like the defendant and began to cry and did not answer any subsequent questions about the allegations. *Kitch*, 239 Ill. 2d at 464. The supreme court concluded that the trial court did not err by admitting the victims' out-of-court statements, because they appeared for cross-examination within the meaning of the confrontation clause. *Kitch*, 239 Ill. 2d at 465.

¶ 56    In the present case, defendant relies on the holding in *Learn* and argues in his supplemental brief that his case presents a similar scenario regarding the lack of "accusatory" testimony. He points out that here, as in *Learn*, M.D.B. did not offer any accusatory testimony from the witness stand. Instead, M.D.B., after providing some background information about his age, where he lived, and his family, testified that he remembered meeting "someone named Joe" and "Joe" wrestling with him and his cousins. When asked what he remembered about the wrestling, M.D.B. stated, "I don't remember really." He remembered defendant touching him, but not where he was touched. When prompted further, M.D.B. again stated that he could not remember. Defendant thus asserts that M.D.B. merely testified to preliminary matters, which *Learn* dismissed as "[i]mmaterial or general background 'testimony.' " *Learn*, 396 Ill. App. 3d at 900.

¶ 57    Defendant believes that the issue in *Learn* was not that the defendant was deprived of his

confrontation right because the victim began crying after she had answered some initial immaterial background questions and could not continue; rather, defendant argues, the issue was that, for whatever reason, the victim "did not testify at all about the charge in [the] case" and "did not 'bear testimony' against defendant." *Learn*, 396 Ill. App. 3d at 900. Defendant maintains that the only testimony that M.D.B. gave was to uncontested facts and that, because M.D.B. did not defend or explain his out-of-court statements to Plant and did not "give accusatory testimony" or "confront and accuse [defendant] of something," like by stating that "defendant touched my private parts," defendant "was not confronted by his accuser nor given the right to rigorously test the accusation against him through cross-examination." (Internal quotation marks omitted.) *Kitch*, 239 Ill. 2d at 465 (quoting *Learn*, 396 Ill. App. 3d at 901-02).

¶ 58    Similar to defendant here, the defendant in *Garcia-Cordova II* argued, pursuant to his understanding of *Learn*, that the victim did not give any accusatory testimony against him, and so neither the *Learn* nor the *Kitch* standards was satisfied and his constitutional right to confront the witnesses against him was violated. *Garcia-Cordova II*, 2011 IL App (2d) 070550-B, ¶ 53. As stated in *Garcia-Cordova I*, we determined that the case was akin to the memory-loss cases of *Fensterer* and *Owens*. Because *Kitch* did not involve memory loss and did not touch upon the cases dealing with memory loss, nothing in *Kitch* dissuaded us from relying on our previous determination. *Garcia-Cordova II*, 2011 IL App (2d) 070550-B, ¶ 56.

¶ 59    We noted that our supreme court followed *Fensterer* and *Owens* in *Flores*, where it held that "a gap in the witness' recollection concerning the content of a prior statement does not necessarily preclude an opportunity for effective cross-examination." (Internal quotation marks omitted.) *Garcia-Cordova II*, 2011 IL App (2d) 070550-B, ¶ 58 (quoting *Flores*, 128 Ill. 2d at 88). Additionally, the supreme court in *People v. Sutton*, 233 Ill. 2d 89, 122-23 (2009), confirmed its earlier decision in *Flores* that a witness who recalled making out-of-court statements but could not recall what the statements were was deemed available for cross-examination. Thus, we concluded that both the United States Supreme Court and the Illinois Supreme Court have squarely held that a witness's memory loss does not implicate the confrontation clause, and *Kitch* did not hold otherwise. *Garcia-Cordova II*, 2011 IL App (2d) 070550-B, ¶ 59.

¶ 60    The defendant in *Garcia-Cordova II* attempted to distinguish the "*Fensterer-Owens-Flores* trilogy" at oral argument, maintaining that *Learn* took his case outside the memory-loss cases. The defendant argued that *Kitch* cited *Learn* with approval, and the defendant then drew the conclusion that *Learn* requires the State to confront a witness with his or her prior out-of-court statement where the witness testifies that he or she does not remember giving the out-of-court statement. *Garcia-Cordova II*, 2011 IL App (2d) 070550-B, ¶ 60.

¶ 61    The defendant's argument, however, discounted the following: (1) that *Learn* held that the victim must give accusatory testimony where the victim is the only witness other than hearsay reporters who can accuse the defendant of actions constituting the charged offense (*Learn*, 396 Ill. App. 3d at 900), but the victim in *Garcia-Cordova II* was not the only witness other than hearsay reporters, as the defendant's statements to the police corroborated the victim's out-of-court statements; (2) that the *Kitch* court did not follow or adopt *Learn* and cited *Learn* only to distinguish it; and (3) that the State does not have the burden to

confront witnesses; it is the accused who has the right to be confronted with the witnesses against him. *Garcia-Cordova II*, 2011 IL App (2d) 070550-B, ¶ 61 (citing *Pointer v. Texas*, 380 U.S. 400, 404-05 (1965)).

¶ 62        In *Learn*, the issue was that "there was no ability for the witness to respond at all, even if only to state a lack of memory, leading also to the inability to cross-examine the witness." *People v. Martin*, 408 Ill. App. 3d 891, 897 (2011) (citing *Learn* and *In re Rolandis G.*, 352 Ill. App. 3d 776, 784 (2004), *rev'd on other grounds*, 232 Ill. 2d 13 (2008)). The distinction between *Learn* and *Garcia-Cordova II* was that the witness in *Learn* actually lacked the ability to answer the questions propounded by counsel; whereas in *Garcia-Cordova II*, the witness answered the questions put to her either verbally or with a head shake, except for the question of what the defendant's hand was doing, to which she made no response. Thus, we concluded, as we did in *Garcia-Cordova I*, that the witness's inability to recall why she spoke with the detective and what happened in her bedroom or on the couch placed the case within the "*Fensterer-Owens-Flores-Sutton* doctrine." *Garcia-Cordova II*, 2011 IL App (2d) 070550-B, ¶ 62. Noting that "[m]emory loss can occur on a continuum," we further concluded that we did not have to decide at what point memory loss might become a denial of the right of confrontation, because the witness testified in enough detail that she could have been cross-examined. *Garcia-Cordova II*, 2011 IL App (2d) 070550-B, ¶ 62. As stated in *Owens*, the confrontation clause is not "violated by admission of an identification statement of a witness who is unable, because of a memory loss, to testify concerning the basis for the identification." *Owens*, 484 U.S. at 564. That defense counsel chose to let the witnesses' direct testimony stand did not make the witnesses unavailable for cross-examination. *Garcia-Cordova II*, 2011 IL App (2d) 070550-B, ¶ 63 (quoting *People v. Lara*, 2011 IL App (4th) 080983-B, ¶ 51).

> "[L]imitations on the scope of examination by the trial court or assertions of privilege by the witness may undermine the process to such a degree that meaningful cross-examination within the intent of the [r]ule no longer exists. But that effect is not produced by the witness'[s] assertion of memory loss–which, as discussed earlier, is often the very result sought to be produced by cross-examination, and can be effective in destroying the force of the prior statement." *Owens*, 484 U.S. at 561-62.

¶ 63        Unlike in *Learn*, where the victim shut down emotionally and was unable to answer questions, in *Garcia-Cordova II*, 2011 IL App (2d) 070550-B, ¶ 62, the victim never refused to answer any questions and, when confronted with questions touching upon the alleged abuse or the statements the victim made to others detailing the abuse, she indicated that she could not recall.

¶ 64        We adhere to the rationale of *Garcia-Cordova II* and determine that the memory-loss rule applies to M.D.B. as well because he could not recall some of the details of his encounter with defendant. In *Garcia-Cordova II*, the victim was asked detailed questions about her statements to the detective and was specifically asked whether anything actually happened to her on the couch or in her bedroom, which were where, she had stated, the abuse occurred. This satisfied the standard of "availability." In the present case, M.D.B. testified that he remembered meeting someone named Joe and wrestling with him. He remembered this person touching him, but he could not recall where. This also satisfies the definition of

-13-

"availability." See *People v. Major-Flisk*, 398 Ill. App. 3d 491, 506 (2010) (victim "available" when he testified that, while they were on the defendant's porch, the defendant touched him by making the victim sit on the defendant's hand, but he could not recall in any greater detail the manner in which the defendant touched him).

¶ 65 Moreover, M.D.B.'s testimony provided more than the preliminary matter that *Learn* dismissed as immaterial or general background information. We do not agree that stating, "I don't remember," is equivalent to "freezing up." There is no indication that M.D.B. froze. M.D.B. responded willingly to all the questions asked on direct examination regarding the incident that gave rise to the allegations and regarding his prior statements relating to such allegations. The lack of an accusatory statement about past behavior is not a baseline for avoiding a confrontation problem in a memory-loss case. Moreover, M.D.B. was never asked by either the State or defense counsel whether defendant touched his private parts, and there is no reason to believe that M.D.B. would have refused to answer had he been asked that question. M.D.B. never refused to answer any question and, when confronted with questions touching upon the alleged abuse or his prior statements relating to the abuse, the direct examination provided enough detail to allow for cross-examination within the meaning of the confrontation clause, even where he testified that he was unable to recall. Further, unlike in *Learn*, M.D.B. was not the only witness other than hearsay reporters to give accusatory testimony, as C.I.'s account of the abuse corroborated M.D.B.'s statements.

¶ 66 The supreme court did not express approval of the entire analysis in *Learn* merely because it denied the State's petition for leave to appeal in that case. A supervisory order does not provide a strong indication by the supreme court that a different result is warranted. See *People v. Phillips*, 217 Ill. 2d 270, 280 (2005) (the appellate court must "exercise its independent judgment"). Moreover, the court in *Kitch* would not intend "to upend all of the existing case law" on the memory-loss rule without explicitly saying so. *Garcia-Cordova II*, 2011 IL App (2d) 070550-B, ¶ 70.

¶ 67 The key inquiry is whether M.D.B. was present for cross-examination and answered questions asked of him. Because he was present for cross-examination and answered questions, the confrontation clause placed absolutely no constraints on the use of M.D.B.'s prior statements to Plant. In other words, the question of the admissibility of those prior statements must be measured only by whether they met the requirements of section 115-10 of the Code (725 ILCS 5/115-10 (West 2008)). For purposes of the confrontation clause, because M.D.B. "appeared" for cross-examination at trial within the meaning of *Crawford*, any of his prior statements offered at trial was a constitutional nonevent. *People v. Bryant*, 391 Ill. App. 3d 1072, 1083 (2009). Where the declarant appears for cross-examination at trial, as we conclude happened here, the confrontation clause places no constraints at all on the use of prior testimonial statements. *Bryant*, 391 Ill. App. 3d at 1083. Because defendant cannot prove that an error occurred, he has failed to meet his burden of demonstrating plain error.

¶ 68 Admissibility of Tina's Testimony Regarding Out-of-Court Statements

¶ 69 Defendant contends that the trial court abused its discretion by admitting inadmissible

hearsay when it allowed Tina to testify that (1) C.I. told her that defendant had touched both of the victims' penises, and (2) Katherine told her that Phyllis told Katherine that defendant had admitted to Phyllis, Kim, and Jimmy that he had prior problems with children.

¶ 70        " 'Hearsay evidence is an out-of-court statement offered to prove the truth of the matter asserted, and it is generally inadmissible due to its lack of reliability unless it falls within an exception to the hearsay rule.' " *People v. Caffey*, 205 Ill. 2d 52, 88 (2001) (quoting *People v. Olinger*, 176 Ill. 2d 326, 357 (1997)). Statements offered for their effect on the listener or to explain the subsequent course of conduct of another are not hearsay. *People v. Carroll*, 322 Ill. App. 3d 221, 223 (2001). We find that the trial court properly admitted Tina's conversation with C.I. to explain why Tina returned home to question M.D.B. again about whether he had been abused by defendant.

¶ 71        Furthermore, defendant cannot claim error about the statement made by Katherine regarding defendant's admission that he had prior problems with children. Defendant prompted the hearsay of which he now complains. During direct examination, the prosecutor asked Tina whether, "sometime in January 2003," she had developed "some concerns about how [defendant] may have interacted with [her] children." Tina responded only that this had prompted her to speak to M.D.B. During cross-examination, defense counsel then elicited the following:

"MR. NOLAN [Defense Attorney]: At any rate, at sometime in January you were informed that [defendant] had a conversation with [Jimmy]; is that correct?

THE WITNESS: Yes.

MR. NOLAN: And during that conversation [defendant] had admitted that he had prior problems with abusing children?

THE WITNESS: Yes.

MR. NOLAN: And had been convicted of that charge on a previous occasion; is that correct?

THE WITNESS: I believe he told them he was falsely accused–or, no, not at that time. I'm wrong. Yes, he did. The answer to your question is yes.

MR. NOLAN: Thank you. And where were you when you heard about that conversation?

THE WITNESS: At my–I lived at my mother-in-law's.

MR. NOLAN: Who told you that [defendant] had made those statements?

THE WITNESS: I believe Jimmy and Kim.

MR. NOLAN: Were they at your mom's house when they told you that?

THE WITNESS: I don't–I honestly don't remember.

MR. NOLAN: Could [it] have been a telephone call?

THE WITNESS: Yes, it could have been."

¶ 72        Even if we found that Tina's statement was not prompted by defendant's questions, the admission of that statement explained what had influenced Tina to question M.D.B. Additionally, defendant cannot show that the statement prejudiced him, because he admitted

in the overhear recording that he had disclosed that he was a pedophile and had urges to have contact with the penises of young boys.

¶ 73                                    Admissibility of Prior Convictions

¶ 74        Defendant next contends that the trial court committed reversible error by admitting his three prior convictions of child sexual abuse, due to prejudice and lack of factual similarity. The State filed a motion under section 115-7.3(a)(1) of the Code (725 ILCS 5/115-7.3(a)(1) (West 2008)) to admit defendant's three prior convictions of child sex abuse. The trial court granted the State's motion and at trial admitted (1) a certified copy of the conviction and docketing statement for a 1984 Cook County conviction of two counts of indecent liberties with a child; (2) the charging document and sentencing order for a 1997 Michigan conviction of attempted criminal sexual conduct, second degree (person under the age of 13); and (3) the docket sheets, court order, information, and probable cause affidavit for a 1997 Indiana conviction of child molestation. The State concedes that under section 115-7.3 the out-of-state convictions were not admissible to prove propensity, because these offenses did not violate Illinois penal statutes. However, the State argues that all of the convictions were properly admitted as evidence of other crimes to show intent and absence of mistake.

¶ 75        A trial court's decision to admit other-crimes evidence will not be reversed absent an abuse of discretion. *People v. Donoho*, 204 Ill. 2d 159, 182 (2003); *People v. Childress*, 338 Ill. App. 3d 540, 552 (2003). We will find an abuse of discretion if the trial court's evaluation was unreasonable, arbitrary, or fanciful, or where no reasonable person would adopt the trial court's view. *Donoho*, 204 Ill. 2d at 182.

¶ 76        Under the common law, other-crimes evidence normally is inadmissible if offered only to demonstrate the defendant's propensity to commit the charged crime. *Donoho*, 204 Ill. 2d at 170; *People v. Manning*, 182 Ill. 2d 193, 213 (1998). Evidence regarding other crimes generally is admissible only if offered to prove intent, *modus operandi*, identity, motive, absence of mistake, or any relevant fact other than propensity. *Donoho*, 204 Ill. 2d at 170; *People v. Illgen*, 145 Ill. 2d 353, 364-65 (1991). When evidence of other crimes is offered, the trial judge must weigh its probative value against its prejudicial effect and may exclude the evidence if its prejudicial effect substantially outweighs its probative value. *Illgen*, 145 Ill. 2d at 365.

¶ 77        Section 115-7.3 of the Code provides an exception to the general rule in criminal cases where, as here, a defendant is accused of aggravated criminal sexual abuse. 725 ILCS 5/115-7.3(a)(1) (West 2008). In such cases, "evidence of the defendant's commission of another offense or offenses set forth in paragraph (1), (2), or (3) of subsection (a), or evidence to rebut that proof or an inference of that proof, may be admissible (if that evidence is otherwise admissible under the rules of evidence) and may be considered for its bearing on any matter to which it is relevant." 725 ILCS 5/115-7.3(b) (West 2008). An analysis under the Code also involves weighing the probative value of the evidence against the prejudicial effect.

¶ 78        To be admissible, other-crimes evidence must have "some threshold similarity to the crime charged." *People v. Bartall*, 98 Ill. 2d 294, 310 (1983). As factual similarities increase, so does the relevance, or probative value, of the other-crimes evidence. *Bartall*, 98 Ill. 2d at

-16-

310. Where such evidence is not being offered under the *modus operandi* exception, "mere general areas of similarity will suffice" to support admissibility. *Illgen*, 145 Ill. 2d at 372-73. Evidence is considered "relevant" if it has any tendency to make the existence of any fact that is of consequence to the determination of an action more or less probable than it would be without the evidence.

¶ 79   The evidence regarding the 1984 Cook County conviction of two counts of indecent liberties with a child provided no set of facts for the trial court to determine if there were any similarities between that offense and the present case. The only evidence supplied by the State was a certified copy of the conviction and a docketing statement. A similar problem exists for the 1997 Michigan conviction of attempted criminal sexual conduct, second degree (person under 13). The only evidence that can be gleaned from the conviction and docketing statement is that defendant had engaged in sexual contact with a boy under 13. Thus, the Michigan conviction presents little more in factual detail than the Cook County conviction. We find that the trial court abused its discretion by admitting these convictions, because it simply had no facts to determine the threshold similarity to the crimes charged.

¶ 80   The probable cause affidavit from the 1997 Indiana conviction of two counts of child molestation provides more factual detail for analysis than the other two convictions. The affidavit reveals that defendant performed oral sex on a nine-year-old boy at a motel in 1995. The State argues that that case contains similarities to the present case because the affidavit reveals that defendant had requested to take the young victims to a motel and had made sexual contact with the penises of young boys. Relying on *People v. Stanbridge*, 348 Ill. App. 3d 351, 356 (2004), the State concludes that evidence of defendant's sexual abuse of others was relevant to refute defendant's argument that his touching a young boy's penis was innocent "horseplay" or inadvertent contact and to show intent and lack of accident.

¶ 81   We find two problems with the State's arguments. First, the Indiana affidavit lacks indicia of reliability because it related to defendant's original charges, not to a subsequent guilty plea entered after the Appellate Court of Indiana overturned the conviction. *Sundling v. State*, 679 N.E.2d 988 (Ind. Ct. App. 1997).

¶ 82   Second, we find that the Indiana affidavit was inadmissible hearsay. As previously stated, "[h]earsay evidence is an out-of-court statement offered to prove the truth of the matter asserted[ ] and is generally inadmissible unless it falls within a recognized exception." *People v. Cloutier*, 178 Ill. 2d 141, 154 (1997). Recognized exceptions include business records (see *People v. Smith*, 141 Ill. 2d 40, 68 (1990)), statements constituting present-sense impressions (see *People v. Stack*, 311 Ill. App. 3d 162, 175-76 (1999)), and statements constituting excited utterances or spontaneous declarations (*People v. Smith*, 152 Ill. 2d 229, 258 (1992)). The determination of whether a specific statement is hearsay is purely a legal question reviewed *de novo. People v. Saunders*, 288 Ill. App. 3d 523, 525 (1997).

¶ 83   The business records exception to the rule against hearsay recognizes that, when made as a matter of routine in the regular course of business, records or reports of events or occurrences are generally trustworthy. *Smith*, 141 Ill. 2d at 70. In criminal cases, the business records exception to the rule against hearsay is codified in section 115-5 of the Code (725 ILCS 5/115-5 (West 2008)).

¶ 84    In *Smith*, the supreme court held that prison incident reports are not admissible under section 115-5 when offered to prove the details of events, such as confrontations between inmates and prison employees. *Smith*, 141 Ill. 2d at 74. The court reasoned that, even when timely prepared in the ordinary course of business, those reports "generally lack the earmarks of trustworthiness and reliability which are the true basis for the business records exception to the rule against hearsay and which business records are assumed to ordinarily have." *Smith*, 141 Ill. 2d at 73. Likening prison incident reports to police reports founded on observations made at the scene of a crime, the *Smith* court noted that "writings or records relating to a police investigation are generally excluded from the business records exception to the rule against hearsay" because "[t]he information contained in such reports or records may well call into question the motivation, the recall, or the soundness of conclusions of the author of the report or the person providing the information contained in the report." *Smith*, 141 Ill. 2d at 72-73; see also *Camco, Inc. v. Lowery*, 362 Ill. App. 3d 421, 434 (2005) (noting that police reports are generally inadmissible because they state conclusions or contain inadmissible hearsay). The *Smith* court expressed concerns over the reliability of "business records" that by their very nature are akin to those made "during an investigation of an alleged offense or during any investigation relating to pending or anticipated litigation of any kind," "made with an eye toward some form of subsequent discipline," or made under circumstances suggesting "a fairly positive counter motive to misrepresent." (Internal quotation marks omitted.) *Smith*, 141 Ill. 2d at 72, 73; see also *People v. McClanahan*, 191 Ill. 2d 127, 133-34 (2000) (lab report and affidavit from person who prepared report inadmissible hearsay based on lack of trustworthiness).

¶ 85    The Indiana affidavit was prepared in anticipation of litigation and thus, based on *Smith* and *McClanahan*, cannot qualify under the business records exception to the hearsay rule. Accordingly, we find that the trial court abused its discretion by admitting the Indiana convictions.

¶ 86    Having found that the trial court abused its discretion, we must proceed to a plain-error analysis. Defendant does not contend that the admission of the prior convictions was so serious that it affected the fairness of his trial and challenged the integrity of the judicial process. Rather, he contends that the evidence was closely balanced. Defendant points out that the trial court relied upon the affidavit, specifically the language that defendant was accused of taking a young child to a motel and performing oral sex on him, to find that defendant had the requisite intent to commit the offense charged in the present case. Asserting that evidence of his prior convictions and M.D.B.'s statements to his mother and Plant were inadmissible, defendant points out that the only evidence remaining was his testimony and C.I.'s. Defendant concludes that, without M.D.B.'s testimony or evidence of the prior convictions, his testimony provided a direct challenge to C.I.'s testimony. We disagree.

¶ 87    We have found that the trial court did not abuse its discretion in finding that the content and circumstances of M.D.B.'s out-of-court statements provided sufficient safeguards of reliability for admission. The trial court did not base its decision solely on defendant's prior convictions when it concluded that defendant's testimony, that he did not fondle the victims' penises for sexual gratification, was not credible. Rather, the court stated that it relied on

-18-

defendant's "prior criminal history," as well as the consistent testimony of the State's witnesses and defendant's admission that he was sexually attracted to young boys but had placed himself in the proximity of young children, knowing his propensities.

¶ 88   Upon a careful review of the record, we find that the evidence was not closely balanced. Although defendant denied the requisite intent to commit the offenses, the State's witnesses' versions of the events were consistent as to where and when the acts took place, what was said, and how defendant had abused the victims. Furthermore, defendant admitted that he had sexual urges "to have contact" with the penises of young boys and that he was still attracted to young boys. He acknowledged that he wrestled with the boys in the basement without another adult present. He also admitted that he was "too comfortable" when he wrestled with the boys and that he would re-offend if he let his guard down. C.I. would not have known about defendant's sexual proclivity toward young boys when he testified that defendant tickled the penises of M.D.B. and J.M.H. while saying "I'm going to get your penis." Based on the consistency of the testimony and defendant's admissions, we conclude that the evidence of intentional sexual contact was not closely balanced and that therefore the plain-error rule is not satisfied.

¶ 89                        Ineffective Assistance of Counsel

¶ 90   Defendant last contends that he received ineffective assistance of counsel. To prove ineffective assistance, defendant must demonstrate both that (1) his counsel's performance was deficient and (2) the defense was prejudiced by counsel's deficient performance. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). Because we find that the evidence was not closely balanced, defendant cannot prove the requisite prejudice prong of ineffective assistance of counsel.

¶ 91                                CONCLUSION

¶ 92   Accordingly, upon reconsidering our judgment in light of *Kitch*, we affirm the judgment of the circuit court of De Kalb County.

¶ 93   Affirmed.